## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No.

MAUREEN HERBST,

     Plaintiff,

v.

AMERICAN ORTHODONTICS
CORPORATION, a Foreign Profit
Corporation,

     Defendant.

_____/

## COMPLAINT

    Maureen Herbst ("Ms. Herbst" and/or "Plaintiff") sues the defendant, American

Orthodontics Corporation ("American Orthodontics," "Defendant" and/or "Company"), (Ms.

Herbst and the Defendant are hereinafter referred to as the "Parties") and states:

## SUMMARY OF THE CASE

*__American Orthodontics illegally reduced female Senior Territory Manager's sales__*
*__territory in its Good 'Ole Boy punitive retaliation against female Senior Territory__*
*__Manager for complaining about discrimination, abusive bullying, harassment__*
*__and toxic work environment, and paying her less than her male counterparts__*
*__who, unlike her, get the benefits from additional territory.__*

**Plaintiff, Ms. Herbst, a 51-year old thirty-year veteran saleswoman in the orthodontics**

**industry, was severely, pervasively and repeatedly bullied, harassed and discriminated**

**against by her misogynistic male superior and, after she complained about her mistreatment**

**to her callous indifferent employer (the Defendant, American Orthodontics) and asked to**

**have a different supervisor assigned to her, instead of being protected from the intensifying**

**bullying, the American Orthodontics "Good 'Ole Boys Club" exacted its revenge by**

1

**punishing and retaliating against Ms. Herbst for exercising her legal rights when it stripped her of a huge portion of her sales territory (which she had built from the ground up and nurtured over many years successfully with her own blood sweat and tears and devotion to her clients, who she brought into American Orthodontics), and then handed it over on a silver platter to an inexperienced newly-hired 28-year old male, causing Ms. Herbst to lose substantial commissions and bonuses for years to come as well as causing her crushing emotional devastation, humiliation, and pain and suffering, sufficient to justify the imposition of punitive damages against the perpetrator of her despicable mistreatment.**

## GENERAL ALLEGATIONS

1. Plaintiff brings this action to recover compensatory and punitive damages against Defendant for alleged gender discrimination, gender wage discrimination, age discrimination, and retaliation under the Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.* ("Title VII"); the Florida Civil Rights Act of 1992, Section 760.10 *et seq.* ("FCRA"); the Age Discrimination in Employment Act 29 U.S.C. §621 *et seq.* ("ADEA"); and the Equal Pay Act of 1963 ("EPA"), 52 Stat. 1062, as amended, 29 U.S.C. §206(d) *et seq.*

2. This action seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated against based on her gender and age, subjected to gender wage discrimination, and retaliated against by her employer solely for complaining of the ongoing discrimination.

## JURISDICTION AND VENUE

3. This is an action for monetary damages and all other appropriate relief as deemed by the court, pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"); Equal Pay Act of

1963, 29 U.S.C. §206(d) *et seq.* ("EPA"); Age Discrimination in Employment Act 29 U.S.C. §621 et seq. ("ADEA"); and the Florida Civil Rights Act of 1992, Section 760.10 *et seq.* ("FCRA").

4.      This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under Title VII, the ADEA, and the EPA.

5.      This Court has jurisdiction of the state law claims herein pursuant to 29 U.S.C. § 1367, as this action involves state law causes of action arising from the same case or controversy as the federal claims herein.

6.      Venue is proper in this district pursuant to 28 U.S.C. §1391(b) based upon the fact Defendant is and was located in this judicial district and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

7.      Plaintiff was employed by Defendant within Palm Beach County, Florida.

8.      Plaintiff served as a Senior Territory Manager covering South Florida and the Tampa Bay Area.

9.      Defendant is in the business of providing orthodontic products and services to the orthodontic specialist. American Orthodontics is one of the world's largest manufacturers of orthodontic treatment supplies. It has over 700 global employees and product availability in over 100 countries and throughout the United States, including, but not limited to, Florida.

10.     At all times material hereto, Defendant is a Profit Corporation registered to do business in Florida and it had, or usually kept, an office for transaction of its customary business in South Florida, including Palm Beach County, as it does still.

11.     This Court has long-arm jurisdiction over Defendant including, but not limited to, pursuant to Fla. Stat. 48.193.

12.     At all times material, Defendant was engaged in substantial and not isolated activity within this State.

13.     Defendant has had sufficient minimum contacts within the State of Florida such that the maintenance of this suit will not offend traditional notions of fair play and substantial justice. The acts complained of were performed or occurred, at least in part, in the State of Florida. The business conducted by Defendant in the State of Florida was such that Defendant should have reasonably anticipated being haled into court in Florida. The actions of Defendant affected Plaintiff in Florida, at least in part.

**PROCEDURAL REQUIREMENTS**

14.     All conditions precedent to the bringing of the following claims have occurred, been performed, or been excused.

15.     At all times material, Plaintiff is an individual woman over the age of 40 who resides in the State of Florida.

16.     Plaintiff has complied with all statutory prerequisites to file this action.

17.     On or around April 27, 2022, Plaintiff dual filed her charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge number 510-2022-04551.

18.     On or around August 15, 2022, the EEOC issued its Dismissal and Notice of Rights, and this action is being commenced.

19.     This action is being commenced within ninety (90) days of receipt of the EEOC's Notice of Dismissal.

**FACTUAL BACKGROUND**

4

20.     Ms. Herbst is a 30-year veteran in the orthodontic industry, having served the last 12 years as a Senior Territory Manager for Defendant, American Orthodontics, covering South Florida and the Tampa Bay Area.

21.     Throughout her tenure, Ms. Herbst has been a loyal and dedicated employee. The respect she has earned from those in the industry, her colleagues and, most importantly, the Company's clients whom she serviced, have allowed her to continue to make significant contributions to the Company.

22.     Ms. Herbst has grown revenues in her territory from an estimated $700,000/year to over $4,000,000/year! primarily through her blood sweat and tears, the old fashioned way, one client at a time by providing unsurpassed service.

23.     Ms. Herbst has distinguished herself as a top performer, consistently exceeding sales targets, earning 2011's Sales Person of the Year, making Presidents Club 10 out of 12 years and reaching her set budget goals 11 of the 12 years and is currently on track to do the same this year.

24.     Her performance numbers spoke for themselves. Ms. Herbst remained on a trajectory to do even better, until she was punished and retaliated against for having the nerve to speak up against her mistreatment by her supervisor/manager.

25.     On or about March 24, 2022, Ms. Herbst had an ill-fated call with her manager, Mr. Reifschneider[1] in which he (once again) became irate, hostile and aggressive and continued to scream at Ms. Herbst (mistreatment for which he singled her out).

---

[1] Mr. Reifschneider originally became Ms. Herbst's manager 10 years ago.  Ms. Herbst has complained about him to the Company in the past, No doubt she is not alone. From the very beginning, Mr. Reifschneider seemed to always have an issue with Ms. Herbst.

26.    Very disturbed by this, Ms. Herbst asked that they conclude the call and then, that same day, she made a direct request to the VP of Sales, Mr. Beaudoin, that he set up and join a call with both Ms. Herbst and Mr. Reifschneider on March 25, 2022, in an effort to moderate.

27.    During Ms. Herbst's March 24, 2022 call with Mr. Beaudoin, she expressed to him how she, as a woman, had been singled out and continuously bullied, harassed and mistreated by Mr. Reifschneider.

28.    She asked that a different manager be assigned to her so that she would no longer be victimized by Mr. Reifschneider.

29.    Ms. Herbst also expressed her concerns that she was being pushed out from her sales territory and being required to train her replacement, Will Bentson, a much younger 28-year-old male employee who had been hired supposedly to assist Ms. Herbst and Jon Hall, a male counterpart with a territory larger than Ms. Herbst's.

30.    In response, Mr. Beaudoin stated that Ms. Herbst is the Company's "Tampa Rep" and misrepresented that that would not change.

31.    Ms. Herbst's complaints of severe and pervasive bullying and mistreatment by Mr. Reifschneider, based on her gender and age compared to that of Mr. Bentson's, and her worries about being forced out, were cast aside, and not addressed.

32.    Immediately subsequent to his call with Ms. Herbst, Mr. Beaudoin initiated a call that included Ms. Herbst and Mr. Reifschneider wherein they collectively discussed Ms. Herbst's territory and ways they could utilize the "assistant," Mr. Bentson.

33.    Again, Mr. Beaudoin misrepresented to Ms. Herbst that she should not worry, that she was his "Tampa rep," that the new assistant, Mr. Bentson, was not there secretly to take any of Ms. Herbst's territory and that Ms. Herbst should feel confident about this.  While Ms. Herbst

had no objection to being provided an assistant (in the past, assistants tended to be female who assisted Territory Managers to whom they were assigned, and who were not handed the territories of those Territory Managers they assisted), she expressed an objection if she was going to have to give up part of her territory, which she, herself, had worked long and hard to build and which she was expecting to continue to grow internally and losing part of her hard-earned compensation and bonus potential that was reasonably expected would be hers based on organic growth now that she had found, established and grew the business from the ground floor up.

34.     On or about March 28, 2022, after not having heard back from Mr. Beaudoin after their call with Mr. Reifschneider), Ms. Herbst followed up with another call to Mr. Beaudoin, wherein she again explained what had recently occurred during her call with Mr. Reifschneider, but also commented upon the history of mistreatment she had experienced during the time she had been reporting to Mr. Reifschneider. In frustration, Ms. Herbst began crying and commented that Mr. Reifschneider had always treated Ms. Herbst differently than others in her Region (all male), and that, more recently, he had become increasingly combative and hostile towards Ms. Herbst and that her fateful March 24, 2022 call with Mr. Reifschneider was just the latest in a continuation of abuse.

35.     Also during this call, Ms. Herbst expressed to Mr. Beaudoin the tremendous anxiety the ongoing mistreatment and continued failures of her manager, Mr. Reifschneider, to treat her professionally, and at least like the other (male) representatives, had caused. Ms. Herbst explained how Mr. Reifschneider continually bullied her and kept her from efficiently performing fundamental parts of her job. During this call with Mr. Beaudoin, Ms. Herbst requested to report to a new manager (not Mr. Reifschneider). Mr. Beaudoin stated he would look into it and reassured

Ms. Herbst that she was in a "Safe Place," which he had told her many times.  Although a seemingly nice sentiment, those words proved to be hollow.

36.     On April 5, 2022, again after not having received a response from anyone, Ms. Herbst sent a follow-up email with additional details, including her concerns about her fears of being replaced by Mr. Bentson, the 28-year-old male with very little experience.

37.     Not until April 14, 2022 did Mr. Beaudoin finally follow-up with Ms. Herbst informing her that:

> a)     she would be reassigned to a new manager, Clint Moore (a not-so-tacit acknowledgement);
>
> b)     a unilateral decision had been made without her consent that her territory would be drastically reduced, removing the Tampa Bay portion (with its substantial 2021 Revenues (the "Tampa Bay Territory"); and
>
> c)     the Tampa Bay Territory would be given to Will Bentson (the same 28-year-old male employee about whom Ms. Herbst expressed concerns about being forced out for and replaced by).

Utterly devastated at this news, Ms. Herbst questioned Mr. Beaudoin why this was the Company's response to her complaints, expressed that her fears of being replaced by Ms. Bentson were obviously legitimate and becoming a reality and also strongly objected to the Company taking her Tampa Bay Territory,  in retaliation for her having lodged her complaints just weeks before.  Again Ms. Herbst's concerns fell on deaf ears, as Mr. Beaudoin had no response.

38.     What happened to Ms. Herbst would never have been done or said to a male; male representatives with larger territories have been allowed to grow their territories and management

has increased their territories. Assistants assigned to help male representatives have not been given large portions of their territories.

39.     American Orthodontics's toxic culture as being an unrepentant male-dominated, male-centered, "Good Ole Boys Club" Company is well known within the Company and among its management and employees.

40.     In a not so thinly veiled attempt to cover its tracks, Mr. Beaudoin sent Ms. Herbst a letter dated April 27, 2022 giving the pretense that American Orthodontics would take certain steps in the future to attempt to compensate her for losses in compensation she would have received had they not stripped the Tampa Bay Area from her.

41.     That proposal was an admission on the part of the Defendant that its actions were wrongful and that Ms. Herbst was damaged.

42.     Defendant's proposal was illusory and inadequate in a number of respects. It did not compensate her for all of her lost commissions and bonuses she would have earned from the revenue they stripped from her[2]. It was for just for one year, not the multiple years going forward or covering the cumulative impact from which she would benefit from internal organic growth of those existing accounts. It took her out of a very fast-growing market with great increased earning potential.[3] It was contingent on the subjective conclusion of a supervisor (involved in the decision to strip her of the Tampa Bay Area in the first instance) that she had performed satisfactorily in

---

[2] Among other things, it did not include a full 2% of all lost revenue and did not take into account the loss of a .75% override bonus for representatives who exceeded their plan, which Ms. Herbst has done 10 out of the 12 years she's been with the Company.

[3] Plaintiff was on  track to make her number and 2.75% on that territory that was stripped; that would amount to $38,855.08, not to mention any growth she could reasonably have expected. Plaintiff grew revenue $800,000 last year alone, She would be at a loss moving forward. She was on track to make her number  would have made her bonus of .75% on her territory. What American Orthodontics offered to make up her losses was inadequate. Plaintiff plans to work another 10 years at least. This reduction of territory also removes any future growth potential which was reasonably expected. Last year she grew $800,000 in revenue entitling her to significant commissions and bonus; her growth potential for many years to come went to Will Bentson, the newly-hired inexperienced 28-year old male assistant who didn't build that business but will inherits all of the benefits of Plaintiff's hard work.

the transition of her Tampa Bay Area accounts and clients to the very same young male hired to take over her territory (an indication that she was eminently qualified to continue to service the accounts and that her inexperienced replacement was not), which Ms. Herbst might receive "[i]f the VP of North American Sales deems the transition of account to be successful and professional (whatever that was supposed to mean). The proposal failed to take into account what would happen if her accounts which she nurtured carefully were not handled professionally and competently by her inexperienced replacement and clients dropped American Orthodontics? Would she be blamed for not successfully and professional transitioning the accounts she no longer had any input into or control over?  Why should Ms. Herbst lose commissions over accounts she had proven she was handling successfully because of the failure of her replacement or the subjective conclusions of a VP who wasn't applying any objective criteria?

43.     The decision to strip her of her territory also put Ms. Herbst in a negative light with others throughout American Orthodontics, demoralized and served her with a stern message with a chilling effect to be sure not to object or criticize a manager/supervisor again.

44.     While it is true that Ms. Herbst wanted to be assigned to a different supervisor than Kevin Reifschneider, about whom she complained, it is also true that, rather than protect her from the person about whom she complained, the Company exacted revenge and punished Ms. Herbst for complaining about his gross illegal mistreatment of her.

45.     The Company's actions toward Ms. Herbst underscored the male-dominated misogynistic toxic culture that permeates American Orthodontics where fellow males and male friends are welcomed to the Good 'Ole Boys Club and glorified and taken care of and women are not brought in or are disrespected and kept down. What happened to Ms. Herbst  would not have happened to a male, and what happened to Ms. Herbst occurred and was condoned because she

10

was a woman and she was victimized by outright discrimination based on disparate treatment of her as well as harassment, hostile work environment and classic retaliation against her.

46.     The Company's retaliation is representative of the "Good Ole Boys Club" that exists at American Orthodontics when a female speaks up in regard to abusive practices.  Ms. Herbst was not asking for anything other than to be reassigned to another manger in hopes of being treated professionally (e.g., not bullied, belittled or screamed at).  Ms. Herbst, a successful 51-year-old female with one of the largest territories had her territory significantly reduced in spite of the fact that she exceeded performance goals in 2021 and in previous years. This action, cutting territory with significant revenue is not something done to tenured male employees at American Orthodontics.  In the Company's decision to punish Ms. Herbst for her legitimate complaint, it decided to reward a much younger (28-year-old) male subordinate with very little experience and no record of success with a very valuable $1,420,000 dollar book of business  "gift" which Ms. Herbst generated through her hard work over many years.!!  Interestingly, in the Company's haste to punish Ms. Herbst, its timing in immediately and drastically modifying a territory (within two weeks) and not at the beginning of a financial quarter or calendar year, as is customary, underscores the fact that its actions were retaliatory meant to send a swift and strong message that an older female will be punished for addressing illegal management behavior.

47.     Ms. Herbst earned about $239,000 in salary and commissions in 2021.  This was due to her efforts in organically growing and successfully running a large territory, rooted in the many client relationships that she has cultivated and maintained over many years.  As the only female with a territory in excess of $4,000,000, the Company clearly took steps to significantly reduce her territory and thereby her earning potential, which would have a ripple effect for years to come.  Male counterparts with territories exceeding $4,000,000, three representatives in Ms.

Herbst's Region who have $4,000,000 and others throughout the Company with territories estimated at $4,800,000 and $6,000,000 have not had their territories reduced in any significant way.  Ms. Herbst's counterpart who covers 4 states, South Carolina, parts of Georgia, Alabama and Central and North Florida gave up just $200,000 in revenue to add to the 28-year-old male, Will Bentson's new territory, while Ms. Herbst was forced to involuntarily give up a disproportionate $1,412,000.  The expense to Ms. Herbst is a loss of potential revenue growth, reduced status with a $2,580,000 territory, while the protection of male counterparts' status and income at the Company remains secure. Ms. Herbst was discriminated against because of her gender. Lots of people in the Company are asking why this was done to Ms. Herbst and there is no legitimate non-pretextual reason.

48.     This disparate treatment is  Gender Wage Discrimination and a gross violation of the Equal Pay Act. Males who grow their territory are allowed to keep their territories and earn all of their commissions, bonuses and total compensation, but Ms. Herbst was not paid the same for her Tampa Bay Area.

49.     The "Good Ole Boys Club" at American Orthodontics is pervasive and readily apparent.  American Orthodontics is a company where males (sometimes less successful, less profitable and less experienced than their female counterparts) are praised, promoted and rewarded – and successful, profitable and experienced females, such as Ms. Herbst, are criticized, defamed, ridiculed and harassed. This culture is one that Mr. Reifschneider perpetrated and fully endorsed, which often manifested itself in his many demeaning and derogatory remarks made to Ms. Herbst, often in mixed company, which including but were not limited to the following:

      a)  "You're so lucky to have a dual income with your husband."

      b)  "You made $XXX,000 last year. My wife made barely anything."

c)  "Maureen has the most potential to bring in revenue," (based on non-
    factual data).

d)  "Maureen doesn't work."

e)  "There were problems with Maureen's expense reports"

f)  "You are lucky that you have dual income with both your husband and you
    working. My wife does not work."

g)  Mr. Reifschneider told Plaintiff's colleagues that  she doesn't work and he
    knows that she stays home with her kids, even though she was making her
    number and was a top rep. He also slandered her to upper management and
    lied about an expense issue (the "Panera Bread incident").

h)  Also, Sabrina a new rep asked for a raise and Mr. Reifschneider told her she
    was not getting one and that he knows "it is hard working as a women at
    American Orthodontics".

50.     There is systemic discrimination throughout American Orthodontics and everyone
is aware (Plaintiff has colleagues willing to corroborate this). Plaintiff has a stellar track record of
success. She built her territory and was not given territory like most of the "Top Men" in the
company. American Orthodontics gives territory to the "Good Ole Boys" so they can make more
money and get all the accolades for example:

> The most obvious example is the Rep, Jon Hall, who started 2 years after
> Plaintiff. He lives in South Carolina. They both hit $4 million in revenue
> last year but he started out with $2.5 million in his territory, whereas
> Plaintiff started at $700,000. Plaintiff had to give Hall Orlando when she
> started and did not get compensated for that. Over the years Hall received
> Alabama, then the rest of South Carolina and more of Georgia. He lives in
> South Carolina but has four states he needs to cover. When he was given
> South Carolina in 2018, Mr. Reifschneider had taken that from the female
> Georgia rep Sabrina to give to Hall. At that time, Plaintiff sent an email
> requesting for Orlando back and Mr. Reifschneider refused (Plaintiff is 1:40
> hours from Orlando and Jon Hall is 8 hours away in Charleston SC to
> Orlando FL). This made no sense to anyone except we knew they build
> territories for Men!. They cut Plaintiff's territory so she is now at $2.6
> million whereas Hall is still going to be close to $4 million.
> In other examples, Plaintiff has had her territory cut three times in total. She
> had to give Orlando to Jon Hall when he started in 2012 and was not

compensated. In September 2015 They took an area of Miami and gave it to another male, Russell Jones, who lived in Virginia and had territory in Virginia. They allowed Jones to fly into her territory and allowed him authority to offer better pricing than Plaintiff was allowed, effectively setting up a gamed system to make him successful playing by different rules. That had never been done before and her reputation was on the line in her territory to her accounts that this male was flying in on and offering better deals to accounts that she could not give to her existing accounts. She also was making her number again and was given no explanation to why this was done. She wrote emails to executives which were ignored. At the end of the year, Russell failed in the Miami market and they gave it back to her to pick up the pieces. No rep in the company could understand why this was happening since this has never been done. It was done to me because I am a female and to favor a male.

In 2022, there were still NO female managers in any division. In 2021 a well-respected Female Rep asked for the Regional Manager position then-recently vacated in the Northeast but told her they were not ready to make any decisions, and they did not follow up with her as a candidate and, frustrated, she left American Orthodontics. They then promoted a male, 30 years old, who lives in Georgia who has to fly and stay in hotels for that manager position. In 2022, only 8 of 42 reps were female. The Southwest region is comprised of Men only and the only female is an assistant to the men.

51.     During the period in question, there have been no female sales managers, nor have there ever been.

52.     In 2021, a proven, successful 56-year-old female representative applied for a regional sales manager position in the Northeast where she had worked for a decade and resided. She was passed over for a 31-year-old male who had recently returned to American Orthodontics from another company and who worked and lived outside the Northeast Territory and continues to reside in Atlanta, GA.

53.     Frustrated with the "Good Ole Boys Club," she made the difficult choice to move on and start over. American Orthodontics cannot seem to tolerate long tenured, successful women

in their ranks.  Despite Mr. Beaudoin's phony and misleading attempts to reassure Ms. Herbst in her very vulnerable time of need, there is certainly no "Safe Place" within American Orthodontics.

54.     The Company's adverse actions taken against Ms. Herbst have not only impacted Ms. Herbst's career at American Orthodontics, but have dramatically and negatively impacted the future of her 30 year career in the Orthodontic Industry. Ms. Herbst's standing in and outside the Company may have been irreparably damaged. Ms. Herbst has built up a reservoir of goodwill over many years and the Company has caused her great economic, professional and emotional harm.

55.     Mr. Reifschneider harbored animus against Ms. Herbst and wanted to fire her, but American Orthodontics realized that it might get sued so Mr. Reifschneider set out to make her life so miserable that she would quit on her own. Stripping her of the Tampa Bay Area was part of that devious plan but, so far, that plan has failed. Instead, Ms. Herbst engaged in protected activity and complained, filed a Charge of Discrimination and is now filing this lawsuit, while retaining her employment. Ms. Herbst has persisted.

56.     Not only did Mr. Beaudoin falsely attempt to reassure Ms. Herbst that she was in a "Safe Place" and free to share her concerns of mistreatment, but the Company then failed to investigate Ms. Herbst's complaints.  It also added insult to injury by accommodating Ms. Herbst's request to report to a new manager, but at the high cost of a significant and very profitable portion of her territory.

57.     Mr. Beaudoin later deigned to represent that the real reason the Tampa Bay Area was stripped from Ms. Herbst was because she supposedly refused to work with Will Bentson, as her assistant, a falsehood. Mr. Beaudoin's lack of credibility has already been determined by a judge in a recent lawsuit involving American Orthodontics.

58.     The timing, and the callous manner in which Ms. Herbst was treated, leads to the inescapable conclusion that the Company chose to penalize Ms. Herbst for reporting to Mr. Beaudoin, the ongoing abusive and discriminatory treatment (amounting to discrimination, harassment, and a hostile work environment) she had continued to experience at the hands of Mr. Reifschneider, by stripping her of a huge amount of revenue and eliminating the Tampa Bay Area from her territory in retaliation.

59.     Defendant's conduct occurred because of Plaintiff's legally protected characteristic, her sex/gender, and the conduct was severe or pervasive enough to make a reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile or abusive.

60.     Defendant, by and through the conduct of its agents, discriminated against Plaintiff based on her sex/gender, including by permitting Plaintiff to endure escalating discrimination despite her complaints; by stripping her of sales territory and assigning it to a newly-hired, much younger and inexperienced male and assigning additional sales territory to the newly-hired much younger and inexperienced male instead of to her, and by ordering her to personally assist that male in the transition of clients in her stripped territory "successfully and professionally", to her detriment (for which she would receive no commissions and bonuses) and to the detriment of her sales efforts in the remaining portion of her territory (for which she would receive commissions and bonuses for successful sales efforts, if not so redirected), intentionally reducing Plaintiff's pay more than her male colleagues holding the same title who were allowed to keep their territory and not be so redirected.

61.     The harassing and mistreatment of Plaintiff by Mr. Reifschneider and Mr. Beaudoin that made hers a hostile work environment included, but was not limited to, ignoring Plaintiff's

requests for support while providing such support for her male colleagues, screaming at her, being belligerent, hostile and aggressive, bullying and belittling her, criticizing her for no reason, accusing her of wrongdoing where there was none, making many demeaning and derogatory remarks to or about Ms. Herbst, often in mixed company, including, but not limited to, the following:

- "You're so lucky to have a dual income with your husband."
- "You made $XXX,000 last year. My wife made barely anything."
- "Maureen has the most potential to bring in revenue," (based on non-factual
- data).
- "Maureen doesn't work,"

And punishing her for having complained about the abusive bullying of Mr. Reifschneider and after she complained and expressed her concerns that she should not be made to turn over her territory to her assistant when male territory managers were not so required (or required to do so to the same extent) after her complaints of sex discrimination and gender wage discrimination.

62.     At all times material, American Orthodontics's agents, Mr. Reifschneider and Mr. Beaudoin, acted within the course and scope of their employment so as to bind American Orthodontics by their actions and failure to act as it related to Ms. Herbst.

63.     Ms. Herbst hired Schwarzberg & Associates as her legal counsel and promised to pay it a reasonable fee for its services.

### COUNT I
#### *Sex/Gender Discrimination*
#### *(Disparate Treatment) in Violation of TITLE VII*

64.     Plaintiff realleges and incorporates by reference each allegation contained in the General Allegations, and alleges further as follows.

65.     Title VII states in relevant parts as follows: "§ 2000e-2. [Section 703] (a) Employer practices It shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to

his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

66.    Defendant is prohibited under Title VII from discriminating against Plaintiff because of her gender/sex with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

67.    Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e et seq., by discriminating against Plaintiff because of her sex/gender.

68.    Defendant, by and through the conduct of its agents, Mr. Reifschneider and Mr. Beaudoin, discriminated against the Plaintiff because of her sex/gender by stripping her of sales territory and assigning it to a newly-hired, much younger and inexperienced male and assigning additional sales territory to the newly-hired much younger and inexperienced male instead of to her, and by ordering her to personally assist that male in the transition of clients in her stripped territory "successfully and professionally", to her detriment (for which she would receive no continuing commissions and/or bonuses) and to the detriment of her sales efforts in the remaining portion of her territory (for which she could receive more commissions and bonuses for successful sales efforts, if not so redirected and if her efforts were not diluted).

69.    Defendant, by and through the conduct of its agents Mr. Reifschneider and Mr. Beaudoin, treated Plaintiff differently than similarly-situated employees, who were other territory managers who were male, because of her sex/gender, including, but not limited to the following comparators:

1.    Jim Reeves,
2.    Sam Jalet,
3.    Brian Horn,
4.    John Mcdade,
5.    Mike Snowden,
6.    Lindsey Spillman,

7.    Steven Dodge,  and
8.    Jon Hall.

none of whom had their sales territory stripped or stripped and given to a newly-hired, much younger and inexperienced male, none of whom were harassed and made victims of a hostile work environment, none of whom where screamed at, responded to with hostility and incorrectly accused of wrongdoing.

70.    The Defendant's disparate treatment was because of Plaintiff's sex/gender.

71.    Defendant treated Plaintiff less favorably than similarly situated employees outside her protected class.

72.    In subjecting Plaintiff to adverse employment action on the basis of her sex/gender, Defendant intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of her employment.

73.    Defendant violated Title VII by unlawfully discriminating against Plaintiff based her gender/sex, of which the Defendant was fully aware.

74.    As a result of Defendant's violations of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunities; harm to business reputation; loss of self-esteem; disruption to her family life; and other harm, pain and suffering, both tangible and intangible.

75.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under Title VII. Accordingly, Plaintiff also requests punitive damages as authorized by Title VII.

76.    Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under Title VII.

77.     Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

78.     Plaintiff Herbst has been damaged by the illegal conduct of Defendant.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

a.   Adjudge and decree that Defendant has violated Title VII, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b.   Enter a judgment requiring that Defendant pay Plaintiff appropriate lost wages, employment benefits, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c.   Enter a judgment requiring that Defendant pay to Plaintiff, in an amount to be determined at the time of trial plus interest, all emotional distress and economic damages, pain and suffering, loss of reputation, punitive damages, liquidated damages, and other pecuniary and non-pecuniary losses.

d.   Award Plaintiff the costs of this action, together with reasonable attorneys 'fees and disbursements of action;

e.   Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

<u>**COUNT II**</u>
*Sex/Gender Discrimination*
*(Hostile Work Environment) in Violation of TITLE VII*

79.     Plaintiff realleges and incorporates by reference each allegation contained in the General Allegations, and further alleges as follows.

80.     Title VII states in relevant parts as follows: "§ 2000e-2. *[Section 703]* (a) Employer practices It shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire

or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

81.    Here, Defendant's conduct occurred because of Plaintiff's legally protected characteristic, her sex/gender, and the conduct was severe or pervasive enough to make a reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile or abusive.

82.    Defendant, by and through the conduct of its agents, discriminated against Plaintiff based on her sex/gender, including by permitting Plaintiff to endure escalating discrimination despite her complaints; by stripping her of sales territory and assigning it to a newly-hired, much younger and inexperienced male and assigning additional sales territory to the newly-hired much younger and inexperienced male instead of to her, and by ordering her to personally assist that male in the transition of clients in her stripped territory "successfully and professionally", to her detriment (for which she would receive no commissions and bonuses) and to the detriment of her sales efforts in the remaining portion of her territory (for which she would receive commissions and bonuses for successful sales efforts, if not so redirected), intentionally reducing Plaintiff's pay more than her male colleagues holding the same title who were allowed to keep their territory and not be so redirected.

83.    The harassing and mistreatment of Plaintiff by Mr. Reifschneider and Mr. Beaudoin that made hers a hostile work environment included, but was not limited to, ignoring Plaintiff's requests for support while providing such support for her male colleagues, screaming at her, being belligerent, hostile and aggressive, bullying and belittling her, criticizing her for no reason, accusing her of wrongdoing where there was none, making many demeaning and derogatory

remarks to or about Ms. Herbst, often in mixed company, including, but not limited to, the following:

- "You're so lucky to have a dual income with your husband."
- "You made $XXX,000 last year. My wife made barely anything."
- "Maureen has the most potential to bring in revenue," (based on non-factual
- data).
- "Maureen doesn't work,"

And punishing her for having complained about the abusive bullying of Mr. Reifschneider and after she complained and expressed her concerns that she should not be made to turn over her territory to her assistant when male territory managers were not so required (or required to do so to the same extent) after her complaints of sex discrimination and gender wage discrimination.

84.     The harassing actions of Defendant against Plaintiff as described and set forth above constitute an adverse employment action for purposes of Title VII.

85.     In subjecting Plaintiff to adverse employment action on the basis of her sex/gender, Defendant intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of her employment.

86.     The harassing conduct was directly connected to Ms. Herbst's sex/gender.

87.     Defendant's leadership, namely MR. REIFSCHNEIDER AND MR. BEAUDOIN, made numerous comments and conduct related to Ms. Herbst's sex/gender.

88.     When Ms. Herbst voiced her objections to this harassing and discriminatory treatment, not only did Defendant fail to address her concerns, but they also continued the pattern of discrimination by making further discriminatory comments and conduct.

89.     Plaintiff did not welcome Defendant's discriminatory conduct or comments.

90.     Defendant abused its supervisory authority over Plaintiff by creating a hostile work environment. A reasonable person subjected to Ms. Herbst's working environment would believe

Defendant's conduct was severe or pervasive enough to have altered the terms and conditions of employment and render the working environment intimidating, hostile or abusive.

91.     As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of Title VII, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.

92.     Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

93.     Defendant American Orthodontics's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiffs rights under the Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

94.     Conduct of Defendant American Orthodontics and/or its agents deprived Plaintiff of her statutory rights guaranteed under Title VII.

95.     Plaintiff Herbst has been damaged by the illegal conduct of Defendant.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

   a. Adjudge and decree that Defendant has violated Title VII, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

   b. Enter a judgment requiring that Defendant pay Plaintiff appropriate lost wages, employment benefits, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

   c. Enter a judgment requiring that Defendant pay to Plaintiff, in an amount to be determined at the time of trial plus interest, all emotional distress and economic

damages, pain and suffering, loss of reputation, punitive damages, liquidated damages, and other pecuniary and non-pecuniary losses.

d.   Award Plaintiff the costs of this action, together with reasonable attorneys 'fees and disbursements of action;

e.   Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT III
### Retaliation in Violation of TITLE VII

96.   Plaintiff realleges and incorporates by reference each allegation contained in the General Allegations, and further alleges as follows.

97.   Title VII prohibits employment discrimination against an individual for opposing or complaining about unlawful discrimination and/or harassment.

98.   Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

99.   Plaintiff opposed Defendant's discriminatory treatment by complaining to Defendant's agents/supervisors including, but not limited to,  Mr. Reifschneider and Mr. Beaudoin about the unlawful harassment and discrimination she was experiencing.

100.   At all times relevant, Plaintiff acted in good faith and with the objective and subjective belief that violations of Title VII by Defendant's employees had occurred.

24

101.    At all times relevant, the unlawful discrimination by Defendant's employees against Plaintiff in the terms and conditions of her employment because she opposed a practice made unlawful by Title VII which would not have occurred but for that opposition.

102.    At all material times, the employees exhibiting discriminatory and harassing conduct against Plaintiff possessed the authority to affect the terms, conditions, and privileges of Plaintiff's employment with the Defendant.

103.    Following Plaintiff's opposition to Mr. Reifschneider and Mr. Beaudoin 's conduct and her numerous complaints to Defendant, the hostility increased dramatically.

104.    Defendant's agents/supervisors Mr. Reifschneider and Mr. Beaudoin  retaliated against Plaintiff after she complained, including, but not limited to,

A. by permitting Plaintiff to endure escalating discrimination despite her complaints; by stripping her of sales territory and assigning it to a newly-hired, much younger and inexperienced male and assigning additional sales territory to the newly-hired much younger and inexperienced male instead of to her, and by ordering her to personally assist that male in the transition of clients in her stripped territory "successfully and professionally", to her detriment (for which she would receive no commissions and bonuses) and to the detriment of her sales efforts in the remaining portion of her territory (for which she would receive commissions and bonuses for successful sales efforts, if not so redirected), intentionally reducing Plaintiff's pay more than her male colleagues holding the same title who were allowed to keep their territory and not be so redirected, and

B. The harassing and mistreatment of Plaintiff by Mr. Reifschneider and Mr. Beaudoin that made hers a hostile work environment included, but was not limited to, ignoring Plaintiff's requests for support while providing such support for her male colleagues, screaming at her, being belligerent, hostile and aggressive, bullying and belittling her, criticizing her for no reason, accusing her of wrongdoing where there was none, making many demeaning and derogatory remarks to or about Ms. Herbst, often in mixed company, including, but not limited to,  the following:

- "You're so lucky to have a dual income with your husband."
- "You made $XXX,000 last year. My wife made barely anything."
- "Maureen has the most potential to bring in revenue," (based on non-factual
- data).
- "Maureen doesn't work,"

C. punishing her for having complained about  the abusive bullying of Mr. Reifschneider and after she complained and expressed her concerns that she should not be made to turn over her territory to her assistant when male territory managers were not so required (or required to do so to the same extent) after her complaints of sex discrimination and gender wage discrimination.

D. and including by continuing to subject Plaintiff to harassment, a hostile environment and discrimination; and reducing her pay beyond the reductions of her peers.

105.    Plaintiff opposed discriminatory and harassing conduct by Defendant and the hostile working environment which is prohibited by Title VII when she complained to Defendant's agents MR. REIFSCHNEIDER AND MR. BEAUDOIN, and Human Resources representative

26

Sue Nett about the discrimination, harassment and hostile work environment as described and set forth above.

106.    Plaintiff's complaints involved Defendant's unlawful, discriminatory, and harassing actions and therefore constituted protected activity under Title VII.

107.    After expressing her opposition to the unlawful discriminatory conduct, Defendant retaliated against Plaintiff and did so because of her complaints.

108.    The adverse employment actions by Defendant, as described and set forth above, were the result of Plaintiff's opposition to the discriminatory and harassing conduct and the imposition of a hostile work environment to which she was subjected to in violation of Title VII.

109.    The discriminatory actions of Defendant against Plaintiff, as described and set forth above, constitute an adverse employment action for purposes of Title VII.

110.    Defendant's retaliation would not have occurred but for Plaintiff's participation in a protected activity.

111.    In subjecting Plaintiff to adverse employment action because of her sex/gender, Defendant intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of her employment.

112.    As a result of Defendant's violations of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunities; harm to business reputation; loss of self-esteem; disruption to her family life; and other harm, pain and suffering, both tangible and intangible.

113.    Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

114.     Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

115.     Plaintiff has been damaged by the illegal conduct of Defendant.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

    a.   Adjudge and decree that Defendant has violated Title VII, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

    b.   Enter a judgment requiring that Defendant pay Plaintiff appropriate lost wages,

    c.   employment benefits, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

    d.   Enter a judgment requiring that Defendant pay to Plaintiff, in an amount to be determined at the time of trial plus interest, all emotional distress and economic damages, pain and suffering, loss of reputation, punitive damages, liquidated damages, and other pecuniary and non-pecuniary losses.

    e.   Award Plaintiff the costs of this action, together with reasonable attorneys 'fees and disbursements of action;

    f.   Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

<u>**COUNT IV**</u>
*Age Discrimination in Violation of ADEA*

116.     Plaintiff realleges and incorporates by reference each allegation contained in the General Allegations, and further alleges as follows.

117.     Plaintiff is an individual woman over the age of 40 and is therefore protected against discrimination under the ADEA.

118.   Defendant treated Plaintiff less favorably than similarly-situated employees outside her protected class.

119.   The ADEA (29 U.S.C. 626) provides that it shall be unlawful for an employer:

120.   "(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of such individual's age;

121.   (2) to limit, segregate, or classify their employees in any way which would deprive or tend

122.   to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age."

123.   Defendant, by and through the conduct of its agent MR. REIFSCHNEIDER AND MR. BEAUDOIN, discriminated against Plaintiff based on her age by permitting Plaintiff to endure escalating discrimination despite her complaints; by stripping her of sales territory and assigning it to a newly-hired, much younger and inexperienced male and assigning additional sales territory to the newly-hired much younger and inexperienced male instead of to her, and by ordering her to personally assist that male in the transition of clients in her stripped territory "successfully and professionally", to her detriment (for which she would receive no commissions and bonuses) and to the detriment of her sales efforts in the remaining portion of her territory (for which she would receive commissions and bonuses for successful sales efforts, if not so redirected), intentionally reducing Plaintiff's commissions and bonuses related to the business and clients she developed in her Tampa Bay Area territory to zero while turning over all of the commissions and bonuses to be earned from the revenue generated from the business and clients Ms. Herbst developed to that same male who were allowed to reap the benefits of her hard work

and be paid the commissions and bonuses she would have been paid if she had not been stripped of her territory and not been so redirected.

124.    Defendant, by and through the conduct of its agents Mr. Reifschneider and Mr. Beaudoin , treated Plaintiff differently than her younger, similarly-situated male colleague, Will Bentson, because of her age.

125.    Defendant, by and through the conduct of its agents, discriminated against Plaintiff based on her age.

126.    The Defendant's disparate treatment was directly connected to Plaintiff's age.

127.    Defendant treated Plaintiff less favorably than at least one similarly-situated employee outside her protected class.

128.    The discriminatory actions of Defendant against Plaintiff, as described and set forth above, constitute an adverse employment action for purposes of ADEA.

129.    In subjecting Plaintiff to adverse employment action because of her age, Defendant intentionally discriminated against Plaintiff with respect to the compensation, terms, conditions, or privileges of her employment.

130.    Plaintiff was replaced by a younger employee outside her protected class, at least as it related to her Tampa Bay Area and because when American Orthodontics redirected $200,000 of business from another Territory Manager, Jon Hall, American Orthodontics gave that business to the newly-hired, inexperienced 28 year old male, Will Benston, instead of to Plaintiff.

131.    Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

132.    Conduct of Defendant through by and through its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

133.    Plaintiff Herbst has been damaged by the illegal conduct of Defendant.

**WHEREFORE,** Plaintiff respectfully prays for the following relief against Defendant:

a.    Adjudge and decree that Defendant has violated ADEA, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b.    Enter a judgment requiring that Defendant pay Plaintiff appropriate lost wages, employment benefits, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c.    Enter a judgment requiring that Defendant pay to Plaintiff, in an amount to be determined at the time of trial plus interest, all emotional distress and economic damages, pain and suffering, loss of reputation, punitive damages, liquidated damages, and other pecuniary and non-pecuniary losses.

d.    Award Plaintiff the costs of this action, together with reasonable attorneys 'fees and disbursements of action;

e.    Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT V
### Retaliation in Violation of ADEA

134.    Plaintiff realleges and incorporates the General Allegations by reference and further alleges as follows.

135.    The ADEA (29 U.S.C. 623(d)) states: "It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual ... because such individual ... has opposed any practice made unlawful by this section, or because such individual ... has made a charge, testified,

assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter."

136.    Defendant discriminated against Plaintiff due to her age based on the foregoing matters alleged herein, all on the basis of her age.

137.    At all times relevant, Plaintiff acted in good faith and with the objective and subjective belief that violations of the ADEA by Defendant's agents had occurred.

138.    Plaintiff engaged in a protected activity when she complained and opposed the age discrimination to Mr. Reifschneider, Mr. Beaudoin and Sue Nett of HR.

139.    At all times relevant, the unlawful discrimination by Defendant's agents/supervisors against Plaintiff in the terms and conditions of her employment occurred because she opposed a practice made unlawful by the ADEA and would not have occurred but for that opposition.

140.    At all material times, the Defendant's agents/supervisors exhibiting discriminatory conduct against Plaintiff possessed the authority to affect the terms, conditions, and privileges of Plaintiff's employment.

141.    Defendant intentionally retaliated against Plaintiff by commission of the acts alleged herein.

142.    Defendant's retaliation would not have occurred but for Plaintiff's participation in a protected activity.

143.    Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

144.    Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

145.    Plaintiff has been damaged by the illegal conduct of Defendant.

**COUNT VI**
***Unlawful Gender Wage Discrimination***
***in Violation of the Equal Pay Act of 1963***

146.    Plaintiff realleges and incorporates the General Allegations by reference and further alleges as follows.

147.    29 U.S.C. §§ 206(d)(1) provides: "No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: Provided, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee."

148.    Defendant's acts or omissions, by and through its agents/supervisors, resulted in unfairly paying Plaintiff commissions and bonuses and total compensation and rates thereof lower than her male counterparts employed by Defendant in the same or substantially similar role, for the same or substantially similar work with the same required skill, effort, and responsibility, violating 29 U.S.C. §§ 206(d)(1).

149.    Defendant stripped Plaintiff of her territory but did not do so of her male comparators, thereby reducing Plaintiff's commissions, bonuses and total compensation,

33

including, but not limited to,  to where Plaintiff was made to receive ZERO for business and clients she secured in her former territory before it was stripped from her and handed over to a male who received  the commissions, bonuses and total compensation she should have been paid; likewise, male comparators who had comparable territories did not have their territories stripped or stripped to the extent Plaintiff's territory was stripped; also male comparators were given additional territories but Plaintiff was not given additional territories that could have or should have been given to her.

150.    Plaintiff voiced her objections to the gender wage discrimination, and Defendant, through its agents MR. REIFSCHNEIDER AND MR. BEAUDOIN, was indifferent.

151.    Defendant discriminated against Plaintiff based on her sex/gender in refusing to compensate Plaintiff equally for the same or similar work performed by her and her male colleagues. Plaintiff was directed to establish and grow her territory only to have a large portion of it stripped from her while her male comparators were allowed to keep their territories and did not have them stripped from them.

152.    Defendant's unlawful actions were willful.

153.    Defendant's acts or omissions resulting in its paying Plaintiff less than her male counterparts were not in good faith, pursuant to a lawful seniority or merit-based scheme, or based on any other legitimate, non-discriminatory grounds.

154.    As a result of Defendant's violations of the EPA, Plaintiff has suffered damages, including, but not limited to: past and future wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

155.    Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

156.    Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

157.    Plaintiff has been damaged by the illegal conduct of Defendant.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

a.    Adjudge and decree that Defendant has violated EPA, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b.    Enter a judgment requiring that Defendant pay Plaintiff appropriate lost wages, employment benefits, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c.    Enter a judgment requiring that Defendant pay to Plaintiff, in an amount to be determined at the time of trial plus interest, all emotional distress and economic damages, pain and suffering, loss of reputation, punitive damages, liquidated damages, and other pecuniary and non-pecuniary losses.

d.    Award Plaintiff the costs of this action, together with reasonable attorneys 'fees and disbursements of action;

e.    Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

<u>**COUNT VII**</u>
*Retaliation in Violation of the Equal Pay Act of 1963*

158.    Plaintiff realleges and incorporates the General Allegations by reference and further alleges as follows.

159.    29 U.S.C. §215(a)(3) makes it unlawful to "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee..."

160.    The EPA prohibits Defendant from engaging in retaliatory acts against Plaintiff based on her participation in a protected activity under the EPA.

161.    Plaintiff engaged in protected activity by complaining of the wage discrimination and requesting to be paid equal to her male colleagues to Mr. Reifschneider,  Mr. Beaudoin, and Sue Nett of Human Resources.

162.    In response to statutorily protected activity, Defendant, through its agents/supervisors, adopted a pattern of subjecting Plaintiff to a series of retaliatory adverse employment actions, including, but not limited to, harassment and a hostile work environment, reducing Plaintiff's pay more than her male colleagues holding the same title; responding to Plaintiff's complaints with hostility; and permitting Plaintiff to endure escalating harassment despite her complaints.

163.    In opposing the discriminatory behavior, Plaintiff had a good faith, reasonable belief that she had been or was being subjected to unlawful discrimination on the basis of her gender.

164.    These reprisals were a materially adverse employment action in that such actions, whether considered individually or collectively, altered the terms, conditions or privileges of Plaintiff's employment, and/or adversely affected Plaintiff's status as an employee.

165.    Further, the retaliatory acts were reasonably likely to deter employees from engaging in protected activity. As such, the retaliatory acts constitute adverse employment actions for the purposes of the EPA.

166.    The retaliatory acts when considered collectively were sufficiently severe and/or pervasive

167.    to materially alter the conditions of Plaintiff's employment and create a hostile working environment.

168.    Plaintiff's actions are causally connected to her protected activity.

169.    Defendant's retaliation would not have occurred but for Plaintiff's participation in a protected activity.

170.    As a result of Defendant's violations of the EPA, Plaintiff has suffered damages, including, but not limited to: past and future wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

171.    Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

172.    Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

173.    Plaintiff has been damaged by the illegal conduct of Defendant.

**WHEREFORE,** Plaintiff respectfully prays for the following relief against Defendant:

a.    Adjudge and decree that Defendant has violated EPA, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b.   Enter a judgment requiring that Defendant pay Plaintiff appropriate lost wages, employment benefits, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c.   Enter a judgment requiring that Defendant pay to Plaintiff, in an amount to be determined at the time of trial plus interest, all emotional distress and economic damages, pain and suffering, loss of reputation, punitive damages, liquidated damages, and other pecuniary and non-pecuniary losses.

d.   Award Plaintiff the costs of this action, together with reasonable attorneys 'fees and disbursements of action;

e.   Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT VIII
### Sex/Gender Discrimination
### (Disparate Treatment) in Violation of Florida Statute Section 760.10(1)(a)

174.   Plaintiff realleges and incorporates the General Allegations by reference and further alleges as follows.

175.   Plaintiff realleges and incorporates the allegations set forth in Count I by reference and further alleges as follows.

176.   The FCRA makes it unlawful for an employer to discriminate against an employee based on that person's sex/gender. § 760.10(1)(a) Fla. Stat. (2020).

177.   Florida Statute Section 760.10(1)(a) provides that "[i]t is an unlawful employment practice for an employer ... to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status."

38

178.    The Defendant's adverse and disparate treatment of Plaintiff to which Plaintiff was subjected as described and set forth above, was because of Plaintiff's sex/gender.

179.    Defendant is prohibited under the FCRA from discriminating against Plaintiff because of her sex/gender with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

180.    Defendant, by and through the conduct of its agents Mr. Reifschneider and Mr. Beaudoin, discriminated against Plaintiff based on her gender/sex.

181.    Defendant, by and through the conduct of its agents Mr. Reifschneider and Mr. Beaudoin , treated Plaintiff differently than her similarly situated colleagues.

182.    The Defendant's disparate treatment was directed to Plaintiff because of her sex/gender.

183.    Defendant treated Plaintiff less favorably than similarly situated employees outside her protected class.

184.    At all times relevant, Defendant, by and through its agents, intended to unlawfully discriminate against Plaintiff in the terms and conditions of her employment because of her sex/gender and Defendant did unlawfully discriminate against Plaintiff in the terms and privileges of her employment because of her sex/gender in violation of the FCRA.

185.    Defendant violated the FCRA by unlawfully discharging and discriminating against Plaintiff based her sex/gender, of which the Defendant was fully aware of.

186.    As a result of Defendant's intentional discriminatory and harassing conduct and constructive discharge of Plaintiff's employment in violation of the FCRA, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff has also suffered and will continue to suffer emotional

distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

187.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiffs rights under the FCRA.

188.    Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

189.    Conduct of Defendant and/or their agents deprived Plaintiff of her statutory rights guaranteed under federal law.

190.    Plaintiff has been damaged by the illegal conduct of Defendant.

**WHEREFORE,** Plaintiff respectfully prays for the following relief against Defendant:

    a.   Adjudge and decree that Defendant has violated FCRA, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

    b.   Enter a judgment requiring that Defendant pay Plaintiff appropriate lost wages, employment benefits, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

    c.   Enter a judgment requiring that Defendant pay to Plaintiff, in an amount to be determined at the time of trial plus interest, all emotional distress and economic damages, pain and suffering, loss of reputation, punitive damages, liquidated damages, and other pecuniary and non-pecuniary losses.

    d.   Award Plaintiff the costs of this action, together with reasonable attorneys 'fees and disbursements of action;

e.   Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT IX
### Sex/Gender Discrimination
### (Hostile Work Environment)
### in Violation of Florida Statute Section 760.10(1)(a)

191.   Plaintiff realleges and incorporates the General Allegations by reference and further alleges as follows.

192.   Plaintiff realleges and incorporates the allegations set forth in Count II by reference and further alleges as follows.

193.   The FCRA makes it unlawful for an employer to discriminate against an employee based on that person's race and color. § 760.10(1)(a) Fla. Stat. (2020).

194.   Florida Statute Section 760.10(1)(a) provides that "[i]t is an unlawful employment practice for an employer.. .to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status."

195.   Here, Defendant's comments and conduct occurred because of Plaintiff's legally protected characteristic, her sex/gender, and the conduct was severe or pervasive enough to make a reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile or abusive.

196.   Defendant, by and through the conduct of its agent MR. REIFSCHNEIDER AND MR. BEAUDOIN, harassed Plaintiff based on her sex/gender by retracting Plaintiff's promised employment opportunity, the West Region assignment, in favor of a newly hired male employee.

197.   Defendant, by and through the conduct of its agents Mr. Reifschneider and Mr. Beaudoin , further harassed Plaintiff based on her sex/gender by denying Plaintiff's request to

transfer to Tampa to care for her ailing husband while permitting a male colleague holding the same title, Write, to do the same.

198.    Defendant, by and through the conduct of its agents, also harassed Plaintiff based on her sex/gender by including canceling/rescheduling one-on-one meetings requested by Plaintiff

199.    to discuss her harassment; declining to invite Plaintiff and other female employees to lunch and/or work functions; harshly criticizing Plaintiffs performance, reducing Plaintiff's pay more than her male colleagues holding the same title; responding to Plaintiff's complaints with hostility; permitting Plaintiff to endure escalating harassment despite her complaints; and, eventually, causing Plaintiff's wrongful constructive discharge.

200.    Defendant's relentless harassment, ridicule, and humiliation over Plaintiff's objection as described and set forth above, including constant discrimination, harassing comments, and Defendant' s failure to take corrective action altered the terms and conditions of Plaintiff's employment, and created a hostile work environment in violation of the FCRA.

201.    The hostile work environment and Defendant's adverse and disparate treatment of Plaintiff to which Plaintiff was subjected as described and set forth above, including her constructive discharge, was because of Plaintiff's sex/gender.

202.    Defendant violated the FCRA by unlawfully constructively discharging, discriminating against, and harassing Plaintiff based her sex/gender, of which the Defendant was fully aware.

203.    The harassment and discrimination directed at Plaintiff was sufficiently severe and pervasive to unreasonably interfere with her physical and/or psychological health, work performance and to create and intimidating, hostile, and offensive working environment.

204.     As a result of Defendant's intentional discriminatory conduct in violation of the FCRA, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

205.     Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the FCRA.

206.     Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

207.     Conduct of Defendant and/or its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

208.     Plaintiff has been damaged by the illegal conduct of Defendant.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

a.   Adjudge and decree that Defendant has violated FCRA, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b.   Enter a judgment requiring that Defendant pay Plaintiff appropriate lost wages, employment benefits, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c.   Enter a judgment requiring that Defendant pay to Plaintiff, in an amount to be determined at the time of trial plus interest, all emotional distress and economic damages, pain and suffering, loss of reputation, punitive damages, liquidated damages, and other pecuniary and non-pecuniary losses.

    d.   Award Plaintiff the costs of this action, together with reasonable attorneys 'fees and disbursements of action;

    e.   Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

**<u>COUNT X</u>**
***Age Discrimination***
***(Disparate Treatment)***
***in Violation of Florida Statute Section 760.10(1)(a)***

209.    Plaintiff realleges and incorporates the General Allegations by reference and further alleges as follows.

210.    Plaintiff realleges and incorporates the allegations set forth in Count IV by reference and further alleges as follows

211.    The FCRA makes it unlawful for an employer to discriminate against an employee based on that person's age. § 760.10(1)(a) Fla. Stat. (2020).

212.    Florida Statute Section 760.10(1)(a) provides that "[i]t is an unlawful employment practice for an employer ... to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status."

213.    The Defendant's adverse and disparate treatment of Plaintiff to which Plaintiff was subjected as described and set forth above, including her constructive discharge, was because of Plaintiff's age.

214.    Defendant is prohibited under the FCRA from discriminating against Plaintiff because of her age with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

215.    Defendant, by and through the conduct of its agent MR. REIFSCHNEIDER AND MR. BEAUDOIN, discriminated against Plaintiff based on her age.

216.    Defendant, by and through the conduct of its agents Mr. Reifschneider and Mr. Beaudoin , further treated Plaintiff differently than her same-titled colleagues because of her age.

217.    Defendant, by and through the conduct of its agents, further discriminated against Plaintiff based on her age.

218.    The Defendant's disparate treatment was directed at Plaintiff because of her age.

219.    Defendant treated Plaintiff less favorably than similarly situated employees outside her protected class.

220.    Conduct of Defendant through by and through its agents deprived Plaintiff of her statutory rights guaranteed under federal law.

221.    Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

222.    Plaintiff Herbst has been damaged by the illegal conduct of Defendant.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

 a.  Adjudge and decree that Defendant has violated FCRA, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

 b.  Enter a judgment requiring that Defendant pay Plaintiff appropriate lost wages, employment benefits, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

 c.  Enter a judgment requiring that Defendant pay to Plaintiff, in an amount to be determined at the time of trial plus interest, all emotional distress and economic

damages, pain and suffering, loss of reputation, punitive damages, liquidated damages, and other pecuniary and non-pecuniary losses.

d.   Award Plaintiff the costs of this action, together with reasonable attorneys ' fees and disbursements of action;

e.   Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT XI
### *Retaliation in Violation of Florida Statute Section 760.10(7)*

223.   Plaintiff realleges and incorporates the General Allegations by reference and further alleges as follows.

224.   Plaintiff realleges and incorporates the allegations set forth in Count V by reference and further alleges as follows

225.   The FCRA prohibits retaliation against an employee for opposing conduct which would violate the terms of the FCRA. § 760.10(7), Fla. Stat. (2020).

226.   Florida Statute Section 760.10(7) provides that "[i]t is an unlawful employment practice for an employer to discriminate against any person because that person has opposed any practice which is an unlawful employment practice under this section, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this section."

227.   Plaintiff opposed the discriminatory conduct of Defendant when she complained to MR. REIFSCHNEIDER, MR. BEAUDOIN, and Sue Nett in Human Resources about the discrimination and increasingly hostile work environment that she was subjected to as described above.

228.     At all times relevant, the unlawful retaliation by Defendant towards Plaintiff in the terms and conditions of her employment occurred because she opposed a practice made unlawful by the FCRA which would not have occurred but for that opposition.

229.     At all times relevant, Defendant's agents/supervisors acted intentionally and with reckless disregard of Plaintiff's rights protected by the FCRA.

230.     At all material times, the Defendant's agents/supervisors exhibiting discriminatory and harassing conduct against Plaintiff possessed the authority to affect the terms, conditions, and privileges of Plaintiff's employment with the Defendant.

231.     Defendant's agents/supervisors MR. REIFSCHNEIDER AND MR. BEAUDOIN retaliated against Plaintiff by continuing to subject Plaintiff to discrimination, harassment and a hostile working environment after she complained of and reported the discrimination and harassment she experienced.

232.     As a direct and proximate result of Defendant's intentional retaliatory conduct in violation of the FCRA, Plaintiff suffered and will continue to suffer damages including lost wages and benefits, severe emotional distress, mental anguish, suffering, loss of dignity, humiliation, embarrassment, loss of reputation, and other pecuniary and non-pecuniary losses.

233.     Conduct of Defendant and/or their agents deprived Plaintiff of her statutory rights guaranteed under state law.

234.     Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

235.     Plaintiff Herbst has been damaged by the illegal conduct of Defendant.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

a.  Adjudge and decree that Defendant has violated FCRA, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

b.  Enter a judgment requiring that Defendant pay Plaintiff appropriate lost wages, employment benefits, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c.  Enter a judgment requiring that Defendant pay to Plaintiff, in an amount to be determined at the time of trial plus interest, all emotional distress and economic damages, pain and suffering, loss of reputation, punitive damages, liquidated damages, and other pecuniary and non-pecuniary losses.

d.  Award Plaintiff the costs of this action, together with reasonable attorneys 'fees and disbursements of action;

e.  Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

SCHWARZBERG & ASSOCIATES
*Attorneys for Plaintiff*
2751 South Dixie Highway, Suite 400
West Palm Beach, FL 33405
Telephone:          (561) 659-3300
Facsimile:          (561) 693-4540

By:  /s/ *Steven L. Schwarzberg* _____
STEVEN L. SCHWARZBERG
Florida Bar No. 0306134
steve@schwarzberglaw.com
mail@schwarzberglaw.com